UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANTHONY HERNANDEZ,
Plaintiff,
v.
PACIFIC WEST BUILDERS, INC., et al.,
Defendants.

Case No. 26-cv-08417-WHO

**ORDER GRANTING MOTION TO REMAND**

Re: Dkt. Nos. 7, 13

In this employment action, plaintiff Anthony Hernandez sues his former employer for retaliation and wrongful discharge. Defendants Pacific West Builders, Inc. ("PWB"), Pacific West Communities, Inc. ("PWC"), Fremont Pacific Associates ("FPA"), and Fremont Pacific Associates, II ("FPA II") removed this case to federal court on the basis of diversity jurisdiction, arguing that non-diverse defendants FPA and FPA II were fraudulently joined. Because defendants have not met their burden to show that there is no possibility that Hernandez can state a claim against FPA and FPA II, I GRANT the motion to remand.[1]

**BACKGROUND**

PWB and PWC are part of The Pacific Companies ("TPC"), a "privately-held group of firms." Compl. [Dkt. No. 1-1] ¶ 8. Caleb Roope is the CEO of PWB and PWC. Declaration of Caleb Roope Regarding Notice of Removal ("Roope Decl.") [Dkt. No. 1-2] ¶¶ 1–2. PWC is a "Manager" of TPC Holdings IX, LLC, which in turn is a general partner of both FPA and FPA II. *Id.* ¶¶ 3–4. FPA and FPA II are owners of the Osgood Apartments project, an affordable housing

[1] Under Civil Local Rule 7-1(b), I find this matter appropriate for resolution without oral argument and VACATE the October 28, 2026, hearing.

development in Fremont, California, while PWB and PWC managed and developed the project. *See id.* ¶ 9; Compl. ¶ 16.

Hernandez, a resident of Alameda County, California, was hired by The Pacific Companies in May 2022 to serve as a construction superintendent for TPC's Osgood Apartments project in Fremont, California. Compl. ¶¶ 9, 13. Around November 2023, a TPC employee informed Hernandez that TPC CFO Zack Deboi had falsely accused the employee of not showing up to work and threatened to fire him based on this accusation if the employee did not accept a pay cut, demotion, and transfer. *Id.* ¶ 19. Separately, a subcontractor told Hernandez that Deboi forced the subcontractor to pay hundreds of thousands of dollars to have its bid reviewed. *Id.* ¶ 20. Hernandez reported both incidents via e-mail to Roope, who did not respond. *Id.* ¶ 21. Approximately two weeks later, Daren Lynch, a General Superintendent for PWB, met with Hernandez and told him that TPC had terminated him, effective immediately, without giving him a reason. *See id.* ¶ 22; Declaration of Daren Lynch in Support of Defendants' Opposition to Plaintiff's Motion to Remand ("Lynch Decl.") [Dkt. No. 12-3] ¶ 1.

Hernandez filed a complaint in California Superior Court for the County of Alameda against defendants, alleging retaliation, wrongful discharge, failure to pay wages, and unfair business practices against all defendants. *See generally* Compl. Defendants then removed the action to this court asserting diversity jurisdiction. Notice of Removal ("Removal Not.") [Dkt. No. 1] ¶ 10. PWB and PWC alleged their own diverse citizenship from Hernandez. *Id.* ¶¶ 13–14. Defendants conceded that FPA and FPA II share citizenship with Hernandez but argued that FPA and FPA II were fraudulently joined parties and that therefore, their citizenship could be disregarded. *Id.* ¶¶ 16–29. Defendants asserted that FPA and FPA II were not "employers" of Hernandez, that they had no role in hiring or firing Hernandez, that they had no authority to set or control his hours, wages, and working conditions, and that employment records only show PWB and/or PWC as his employer. *Id.* ¶¶ 23–26. On these grounds, defendants argued that Hernandez could not maintain any claims against FPA or FPA II. *Id.* ¶ 27.

Hernandez moved to remand on September 11, 2026. Motion to Remand ("Mot.") [Dkt. No. 7].

**LEGAL STANDARD**

A defendant sued in state court may remove the action to federal court if the action could have been brought in federal court in the first instance. 28 U.S.C. § 1441(a). A defendant may remove "any civil action brought in a State court of which the district courts . . . have original jurisdiction." *Id.* When a civil action is removed solely under § 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action. 28 U.S.C. § 1446(b)(2)(A).

Diversity removal requires complete diversity, meaning that each plaintiff must be of a different citizenship from each defendant. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). "Absent unusual circumstances, a party seeking to invoke diversity jurisdiction should be able to allege affirmatively the actual citizenship of the relevant parties." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (citation omitted). In determining whether there is complete diversity, district courts may disregard the citizenship of a non-diverse defendant who has been fraudulently joined. *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (citation omitted).

Under the doctrine of fraudulent joinder, "[j]oinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (internal quotations and alteration omitted). There are two ways to establish fraudulent joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009) (internal quotations and citation omitted). Fraudulent joinder is established the second way if a defendant shows that an "individual[] joined in the action cannot be liable on any theory." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). In determining whether a defendant is fraudulently joined, a court may look beyond the pleadings to evidence proffered by the parties. *Morris*, 236 F.3d at 1068 (considering "summary judgment-type evidence such as affidavits").

United States District Court
Northern District of California

## DISCUSSION

### I. Fraudulent Joinder

Hernandez moves to remand on the grounds that defendants have not met their "heavy burden" to show fraudulent joinder. A defendant invoking federal court diversity jurisdiction on the basis of fraudulent joinder bears a "heavy burden" since there is a "general presumption against [finding] fraudulent joinder." *Hunter*, 582 F.3d at 1046 (citations omitted). The defendant must show that the non-diverse party joined in the action cannot be liable on any theory and that there is no "possibility" that the plaintiff will be able to establish a cause of action against that party in state court. *Jadali v. Cigna Health & Life Ins. Co.*, No. 19-cv-00996-WHO, 2019 WL 1897481, at *7 (N.D. Cal. Apr. 29, 2019). The relevant inquiry is whether there is any possibility a state court could find that the plaintiff states a cause of action against the non-diverse party, not the plausibility standard under Federal Rule of Civil Procedure 12(b)(6). *SBI Builders, Inc. v. Liberty Mut. Ins. Co.*, No. 24-cv-04216-WHO, 2024 WL 4476663, at *3 (N.D. Cal. Oct. 11, 2024). Even if the complaint fails to adequately allege a cause of action against the non-diverse party, I must consider whether a deficiency in the complaint can possibly be cured by granting the plaintiff leave to amend. *Id.* at *3.

Each of the causes of action in the complaint requires that the defendant be an employer or agent of such employer. California Labor Code section 1102.5 prohibits retaliation by an "employer, or any person acting on behalf of the employer." Cal. Labor Code § 1102.5. Sections 201 and 202 likewise concern the conduct of the "employer." *Id.* §§ 201-02. And Hernandez's unfair business practice claim is premised on his other three causes of action. *See* Compl. ¶¶ 50–54. In their Notice of Removal, defendants argue that neither FPA nor FPA II constitute Hernandez's "employer" under California law, based on Roope's statements that only PWB had any right or authority to control Hernandez's hours, wages, and working conditions and that only PWB had a role in hiring and terminating Hernandez. Removal Not. ¶¶ 17, 26.

In Hernandez's motion, he asserts that the complaint alleges joint-employer, agency, and integrated enterprise relationships, such that FPA and FPA II could be alleged to have directly or indirectly, or through an agent or any other person, employed or exercised such control. Mot. at

14 (citing *Mattei v. Corp. Mgmt. Sols., Inc.*, 52 Cal. App. 5th 116, 123 (July 14, 2020)). The parties dispute whether defendants have met their burden to show that Hernandez could not possibly state a claim against FPA and FPA II under these theories.

In support of their argument, defendants submit employment records and declarations regarding Hernandez's personnel and payroll records and termination.[2] *See* Oppo. at 6–9. Defendants emphasize that the employment records identify PWB, PWC, TPC, and Barrett Business Services, Inc. (the entity that administers PWB's payroll), as Hernandez's employer or in connection with his employment and that none of the records identify FPA or FPA II as his employer. *Id.* at 6–7. But FPA and FPA II's absence from these records does not foreclose the possibility that those entities had some degree of control. California courts have held that a right to control may be demonstrated not only by formal agreements showing actual authority to control but also through practical acts of control that indicate apparent authority to control. *Gebran v. Wells Fargo Bank, N.A.*, No. 16-cv-07616, 2016 WL 7471292, at *9 n.13 (C.D. Cal. Dec. 28, 2016). In other words, even if these records indicated that Hernandez's employment was controlled by PWB, PWC, TPC, and/or Barrett Business Services, Inc., on paper, it "does not mean that it is impossible for [FPA and FPA II] to exercise control over [Hernandez's] employment . . . *in practice*." *Id.* at *9; *see also Jadali*, 2019 WL 1897481, at *3 ("[I]t is conceivable that a corporate family could have formal delineations of responsibilities that are not followed in practice.").

Defendants also point to the retaliation complaint that Hernandez filed with the California Labor Commissioner regarding the same termination. Oppo. at 7–8. Hernandez indicated that PWB was the "Employer / Business Name" in the form. *Id.* at 7. Yet defendants concede that "[t]he administrative records establish what [Hernandez] represented to the agency, not an adjudication of which entities employed him." *Id.* at 8.

---

[2] Defendants seek to judicially notice public administrative records in connection with the complaint Hernandez filed with the California Labor Commissioner. Request for Judicial Notice [Dkt. No. 12]. This request is MOOT, as taking judicial notice of these records would not alter my decision. Hernandez objects to defendants' use of those public administrative records and to portions of the declarations defendants filed. *See* Reply at 12–15. Those objections also do not bear on the disposition of this motion and are overruled as MOOT.

Finally, Lynch's declaration does not foreclose the possibility of FPA or FPA II's liability either. His declaration only indicates that he personally did not receive any instructions or communications from FPA or FPA II. Lynch Decl. ¶ 5. While he was involved "in implementing the decision" to terminate Hernandez's employment, the declaration does not indicate who approved the termination. *Id.* ¶ 4. In other words, his declaration does not rule out a scenario in which the decisionmaker acted for the holding company (FPA and FPA II's general partner), while the termination was formally issued in PWB's name.

To be sure, the complaint lacks allegations establishing the requisite control under the various theories of liability, and Hernandez has not proffered evidence affirmatively demonstrating that element either. But his failure to allege facts or offer supporting evidence does not rule out his ability to state a claim against FPA or FPA II under those theories. *See Gebran*, 2016 WL 7471292, at *9. He may still be able to amend his complaint and offer evidence that FPA or FPA II qualifies as a joint employer. Considering the strong presumption against finding fraudulent joinder, I cannot conclude that there is no possibility that FPA or FPA II are liable. As a result, I cannot deny remand on the basis of fraudulent joinder.

**II. Diversity Jurisdiction**

Because FPA and FPA II were not fraudulently joined, I now review their citizenship as it relates to Hernandez's. An unincorporated association, such as a partnership, has the citizenships of all of its members. *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). Both FPA and FPA II are limited partnerships with at least one California-based partner. *See* Roope Decl. Exs. I, J. Accordingly, there is no diversity jurisdiction, and this Court lacks subject matter jurisdiction to hear this case.

//

//

//

//

//

//

**CONCLUSION**

For the reasons set forth above, Hernandez's motion to remand is GRANTED. This case is REMANDED to the Superior Court of California, County of Alameda.

**IT IS SO ORDERED.**

Dated: October 20, 2026

William H. Orrick
United States District Judge